CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mary Melton, Esq., SBN 164407
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No**. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **Arthur Yu**; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Defendants Arthur Yu; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2.  Defendant Arthur Yu owned the real property located at or about 398 W. MacArthur Blvd., Oakland, California, in October 2016.

3.  Defendant Arthur Yu owned the real property located at or about 398

1

W. MacArthur Blvd., Oakland, California, in May 2017.

4.   Defendant Arthur Yu owned the real property located at or about 398 W. MacArthur Blvd., Oakland, California, in July 2017.

5.   Defendant Arthur Yu owned the real property located at or about 398 W. MacArthur Blvd., Oakland, California, in August 2017.

6.   Defendant Arthur Yu owns the real property located at or about 398 W. MacArthur Blvd., Oakland, California, currently.

7.   Defendant Arthur Yu owned the Valero located at or about 398 W. MacArthur Blvd., Oakland, California, in October 2016.

8.   Defendant Arthur Yu owned the Valero located at or about 398 W. MacArthur Blvd., Oakland, California, in May 2017.

9.   Defendant Arthur Yu owned the Valero located at or about 398 W. MacArthur Blvd., Oakland, California, in July 2017.

10. Defendant Arthur Yu owned the Valero located at or about 398 W. MacArthur Blvd., Oakland, California, in August 2017.

11. Defendant Arthur Yu owns the Valero gas station ("Gas Station") located at or about 398 W. MacArthur Blvd., Oakland, California, currently.

12. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

2

**JURISDICTION & VENUE:**

13. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

14. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

16. Plaintiff has gone to the Gas Station on a number of occasions during the relevant statutory period, including October 2016, May 2017, July 2017 and August 2017.

17. The Gas Station is a facility open to the public, a place of public accommodation, and a business establishment.

18. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

19. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant, accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines (ADAAG) during plaintiff's visits.

20. The parking space reserved for persons with disabilities at the Gas Station did not have a marked and reserved access aisle adjacent to the stall for use by persons with disabilities during plaintiff's visits.

21. Currently, the parking space reserved for persons with disabilities at the Gas Station does not have a marked and reserved access aisle adjacent to the stall for use by persons with disabilities and there is no signage in front of the parking space ostensibly reserved for persons with disabilities.

22. Currently, there are no compliant, accessible parking spaces designed and reserved for persons with disabilities in the parking lot serving the Gas Station.

23. In addition to not having any accessible parking spaces, plaintiff alleges, on information and belief, that the Gas Station uses the parking space marked and reserved for persons with disabilities to work on vehicles. The space is often occupied by cars that are being worked on.

24. The Defendants had no policy or plan in place to make sure that the parking space reserved for persons with disabilities remained useable prior to plaintiff's visits.

25. The Defendants have no policy or plan in place to make sure that the parking space reserved for persons with disabilities remain useable.

26. Restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

27. The restroom door hardware at the Gas Station had a traditional style round knob that required tight grasping and twisting of the wrist to operate during plaintiff's visits.

28. The restroom doorway clear passage width was less than 32 inches and inaccessible to wheelchair users. In fact, the restroom doorway is 27 inches wide.

29. There were wall mounted accessories and equipment in the restroom including a paper towel dispenser and disposable toilet seat cover dispenser. These dispensers were mounted so that their highest operable parts were greater than 54 inches above the finished floor and inaccessible to wheelchair

Complaint

users.

30. There was insufficient clear floor space on the transfer side of the toilet because a cabinet with counter on top of it was installed there acting as an obstruction.

31. Instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there were no grab bars.

32. The plumbing underneath the sink was not wrapped to protect against burning contact.

33. Currently, the restroom door hardware at the Gas Station has a traditional style round knob that requires tight grasping and twisting of the wrist to operate.

34. Currently, the restroom doorway clear passage width is less than 32 inches and inaccessible to wheelchair users.

35. Currently, there are wall mounted accessories and equipment in the restroom including a paper towel dispenser and disposable toilet seat cover dispenser. These dispensers are mounted so that their highest operable parts are greater than 54 inches above the finished floor and inaccessible to wheelchair users.

36. Currently, there is insufficient clear floor space on the transfer side of the toilet because a cabinet with counter on top of it is installed there acting as an obstruction.

37. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there are no grab bars.

38. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact.

39. Paths of travel are also one of the facilities, privileges, and advantages

Complaint

offered by Defendants to patrons of the Gas Station.

40. The ramp that run up to the restroom door entrance did not have a landing on the day of plaintiff's visit. It terminated at the restroom door entrance and there was no landing whatsoever.

41. The path of travel from the restroom to the entrance of the Gas Station store required a person to navigate ramp with a slope of about 25.9%.

42. The walkway from the restroom to the entrance of the Gas Station store was less than 36 inches.

43. Currently, the ramp that run up to the restroom door entrance does not have a landing. It terminates at the restroom door entrance and there is no landing whatsoever.

44. Currently, the path of travel from the restroom to the entrance of the Gas Station store requires a person to navigate ramp with a slope of about 25.9%.

45. Currently, the walkway from the restroom to the entrance of the Gas Station store is less than 36 inches.

46. Plaintiff personally encountered these barriers.

47. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

48. Transaction counters are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

49. Meanwhile, even though plaintiff did not personally confront the barrier, the transaction counter at the Gas Station was more than 36 inches high. In fact, the transaction counter at the Gas Station is 44 inches high.

50. There was no lowered, 36-inch or lower portion of the transaction counter at the Gas Station for use by persons with disabilities.

51. Currently, the transaction counter at the Gas Station is more than 36 inches high.

52. Currently, there is no lowered, 36-inch or lower portion of the

Complaint

transaction counter at the Gas Station for use by persons with disabilities.

53. The barriers existed during each of Plaintiff's visits in 2016 and 2017.

54. The plaintiff frequents the Oakland area and has visited there on scores of occasions in 2016 and 2017. He went to the Gas Station in May 2017 and encountered the barriers. He visited the Gas Station on five other occasions but was deterred from going inside.

55. Plaintiff visited the Gas Station two times in October 2016.

56. Plaintiff visited the Gas Station two times in May 2017.

57. Plaintiff visited the Gas Station once in July 2017.

58. Plaintiff visited the Gas Station once in August 2017.

59. Plaintiff would like to return and patronize the Gas Station but will be deterred from visiting until the defendants cure the violations.

60. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

61. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

62. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

63. The barriers in this complaint are easily fixable. For example, replacing door hardware with accessible hardware is a simple and inexpensive task that can be completed without the need to hire a professional.

Complaint

64. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

65. Plaintiff is and has been deterred from returning and patronizing the Gas Station because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Gas Station as a customer once the barriers are removed.

66. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

67. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

68. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

69. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

1    with disabilities. 42 U.S.C. § 12183(a)(2).

2    70. Each accessible parking stall must have an access aisle adjacent to it.

3    Standard accessible parking stalls can have a 60 inch wide access while van

4    accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2

5    (5)(a) & (b) and 2010 Standards § 502.2. The access aisle must extend the full

6    length of the parking spaces it serves. *Id.* at § 502.3.2.

7    71. Here, the failure to have an access aisle is a violation of the ADA.

8    72. Any business that provides parking spaces must provide accessible

9    parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in

10   every eight of those accessible parking spaces but not less than one must be a

11   "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991

12   Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible

13   parking spaces must be van accessible. 2010 Standards § 208.2.4.

14   73. Here, the lack of an accessible parking space is a violation of the law.

15   74. Restroom door hardware must have handles and other operating

16   devices that have a shape that is easy to use with one hand and does not require

17   tight grasping, tight pinching, or twisting of the wrist to operate. 1991

18   Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

19   75. Here, the failure to provide accessible restroom door hardware is a

20   violation of the law.

21   76. All doors to restrooms must have a minimum clear opening of 32 inches

22   with the door open 90 degrees, measured between the face of the door and the

23   opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

24   77. Here, the failure to provide the 32 inch wide restroom doorway opening

25   is a violation of the ADA.

26   78. If controls, dispensers, receptacles or other equipment is provided in a

27   restroom, they must be on an accessible route and be mounted so that their

28   highest operable parts are no greater than 54 inches above the floor. 1991

Complaint

Standards § 4.22.7; 4.27.

79. Here, the failure to ensure that the wall mounted accessories met the height requirement is a violation of the ADA.

80. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

81. Here, the failure to provide such floor space is a violation of the law.

82. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

83. Here, the failure to provide compliant grab bars is a violation.

84. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards § 606.5.

85. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

86. Ramps must have a level landing at both the bottom and top of the ramp. 1991 Standards § 4.8.4.

87. Here, there was no landing at the end of the ramp at the restroom door entrance, which is a violation of the law.

88. Ramps with elevation changes greater than 6 inches cannot be steeper than 8.33%. 1991 Standards § 4.8.2; 2010 Standards § 405.2.

89. Here, the ramp slope does not comply with the law.

90. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. The minimum clear width of an accessible route shall be 36 inches. 1991 Standards § 4.3.3.

91. Here, the failure to provide an accessible path of travel from the restroom to the entrance of the Gas Station store is a violation of the ADA.

Complaint

92. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

93. Here, no such accessible transaction counter has been provided in violation of the ADA.

94. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

95. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

96. Given its location and options, plaintiff will continue to desire to patronize the Gas Station but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

97. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

98. Because the defendants violated the plaintiff's rights under the ADA,

Complaint

they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

99. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

100. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

13

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 18, 2018                CENTER FOR DISABILITY ACCESS

By:    _Isabel P. M~_

_____

Isabel Masanque, Esq.
Attorney for plaintiff

14

Complaint